HAYS AND COMPANY, as Trustee for
Monge Oil Corporation

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., Appellant.

No. 88–1680.

United States Court of Appeals,
Third Circuit.

Argued Jan. 24, 1989.

Decided Sept. 15, 1989.

C. Clark Hodgson, Jr. (argued), John J. Murphy, III, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.

Jeffrey Cooper (argued), Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for appellee.

Before STAPLETON, MANSMANN, and GARTH, Circuit Judges.

OPINION OF THE COURT

STAPLETON, Circuit Judge.

I.

This is an appeal from an order denying defendant Merrill Lynch's motion to compel arbitration of claims asserted against it by Hays & Co. ("Hays"), the Chapter 11 trustee in bankruptcy for Monge Oil Corporation ("Monge" or "debtor"). Hays' complaint alleges various federal and state securities violations in addition to fraudulent conveyance and constructive trust claims under the trustee's powers pursuant to 11 U.S.C.A. § 544(b).

We are presented with three principal issues. Whether this court has jurisdiction over Merrill Lynch's appeal under section 1019 of the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4670, 4671, codified at 9 U.S.C.A. § 15, ("Judicial Improvements Act") signed November 19, 1988. Second, whether and to what extent the trustee is bound by the debtor's pre-petition arbitration agreement. And, third, whether the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549, codified principally at 11 U.S. C.A. §§ 101–1330, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments"), Pub.L. No. 98–353, 98 Stat. 333, conflicts with the Federal Arbitration Act of 1947, Pub.L. No. 80–282, 61 Stat. 669, codified at 9 U.S.C.A. §§ 1–14 ("Arbitration Act") in such a way as to bestow upon a district court discretion to decline to enforce an arbitration agreement in situations like that before us.

We conclude that we do have jurisdiction over this appeal, and that the trustee is bound by the arbitration agreement to the same extent as the debtor. We also conclude that the Bankruptcy Code, as amended, does not conflict with the Arbitration Act so as to permit a district court to deny enforcement of an arbitration clause in a non-core adversary proceeding brought by the trustee in a district court. We will reverse the district court with respect to all claims other than those arising under 11 U.S.C.A. § 544(b).

## II.

Between 1981 and 1984, Monge had two corporate trading accounts with Merrill Lynch. In addition, William Mongeau, President of Monge, together with his wife, had six personal accounts with Merrill Lynch. At least one Monge account was opened on July 15, 1982. At that time Monge, through its duly authorized representatives, signed a Customer Agreement with Merrill Lynch which contained an arbitration clause compelling arbitration of controversies between the parties arising out of their brokerage relationship.

At the time the accounts were opened, Merrill Lynch was allegedly advised that the investments in the corporate accounts were only to be in "long term good quality" securities. Hays also alleges that despite these instructions Merrill Lynch employees engaged in "churning" and invested in speculative securities without disclosing the risks inherent in those transactions to Monge. Hays further alleges that Merrill Lynch mingled the funds in the personal and corporate accounts contrary to instructions and its fiduciary responsibilities. Hays estimates that Monge lost approximately $200,000.

On August 14, 1984, Monge Oil Corporation filed for relief under Chapter 11 of the Bankruptcy Code. Hays was appointed trustee for Monge. Hays thereafter filed this action in the district court alleging claims under section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a), and section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78j(b); common law claims for breach of contract and fiduciary duties, gross negligence, and conversion; claims under the New Jersey Uniform Securities Law, N.J.S.A. § 49:3–47 to 49:3–76, the Pennsylvania Securities Act of 1972, 70 P.S. §§ 1–101 to 1–704; several claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–1968 ("RICO"), and equitable claims pursuant to section 544(b) of the Bankruptcy Code under: 1) the Uniform Fraudulent Conveyances Act as adopted by New York, New Jersey and the Commonwealth of Pennsylvania; and 2) a constructive trust theory.

Hays filed a motion with the bankruptcy court seeking leave to reject the Merrill Lynch Customer Agreement as an executory contract. On March 7, 1988, the court denied Hays' motion, concluding that the existence of an arbitration clause alone did not render the contract executory when neither party had any other obligation under the Customer Agreement. The bankruptcy court's decision was not appealed.

Merrill Lynch filed a motion to dismiss the RICO claims and the claim asserted under section 17(a) of the Securities Act of

1933. Merrill Lynch, based upon the written agreement between Merrill Lynch and Monge, also requested that the district court compel arbitration of Hays' claims and stay the proceedings before it. The court dismissed the RICO claims and the claim under section 17(a), but refused to compel arbitration.

In denying Merrill Lynch's motion to compel arbitration and to stay, the district court concluded that under this court's decision in *Zimmerman v. Continental Airlines,* 712 F.2d 55 (3d Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), it had discretion to nullify a mandatory arbitration clause. The court also stated that since neither the trustee, nor the creditors it represents, signed the arbitration clause in question, they should not be bound by its terms.

### III.

First, it is clear that the district court's order of August 16, 1988, is not a final order for the purposes of 28 U.S.C.A. § 1291. Nevertheless, until recently we would have had jurisdiction under the *Enelow–Ettelson* doctrine. *See Osterneck v. Merrill Lynch,* 841 F.2d 508, 509–10 (3d Cir.1988). In late 1988, however, the Supreme Court repudiated that doctrine in *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), thus implicitly overruling *Osterneck.* Consequently, the first question we need to address is whether we have appellate jurisdiction.

On November 19, 1988, some three months after the district court's order and approximately two months after the filing of the notice of appeal, President Reagan signed into law the Judicial Improvements Act.[1] Section 1019 of the Act amends the Arbitration Act and states:

Sec. 1019. APPEALS UNDER TITLE 9, UNITED STATES CODE.

(A) In General.—Chapter 1 of title 9, United States Code, is amended by adding at the end thereof the following new section:

15. Appeals [2]

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order Arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order—

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

As Merrill Lynch's motion to compel arbitration and to stay was denied, the district court's order clearly comes within section 15(a)(1)(A). Accordingly, we must decide whether section 15 is to be applied retroactively to this appeal.

In *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at

---

**1.** Where no specific effective date is provided, the provision or statute becomes effective upon the date the president signs the bill. *United States v. Shaffer,* 789 F.2d 682, 686 (9th Cir. 1986).

**2.** Congress has apparently inadvertently created two section 15s for title 9. *See* 9 U.S.C.A. § 15 n. 1 (West Supp.1989).

the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." The Court, quoting *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), made it clear that this rule extends to appellate courts, stating that " 'an appellate court must apply the law in effect at the time it renders its decision.' " 416 U.S. at 714, 94 S.Ct. at 2017. *Accord Danbury, Inc. v. Olive*, 820 F.2d 618, 625 (3d Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987) ("This court . . . must apply the law in effect when it resolves an appeal. The court will apply a statute passed after [the] decision in the trial court if that law is a valid enactment.").

Neither of Bradley's exceptions to the general rule is applicable here. Applying section 15 retroactively clearly would not result in manifest injustice; its sole effect would be to accelerate appellate review. *See Delta Computer v. Samsung Semiconductor & Telecommunications Co.*, 879 F.2d 662 (9th Cir.1989). Nor is there legislative history evidencing a congressional intent that the amendment be given prospective application only. *Id.* at n. 2 ("Nothing in the text of the Act or its legislative history reproduced at 1988 U.S. Code Cong. & Admin.News 5982 indicates that we should not apply Section 15 to this case.")

▪ To the contrary, given the content and context of section 15, we are quite confident that Congress must have wished it applied in situations like the one before us. The issue as to whether the grant or denial of a motion to compel arbitration is subject to immediate appellate review has been frequently litigated under various legal theories with varying results. As this Court's review of the law in *Zosky v. Boyer*, 856 F.2d 554, 557–62 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989), demonstrates, the Supreme Court's rejection of the *Enelow–Ettelson* doctrine in *Gulfstream* only added to the uncertainty in this area. Congress' amendment to section 15 was intend-ed to remove this uncertainty with respect to orders denying motions to compel and to stay arbitration by establishing a rule of immediate appealability. Having made the clarifying decision there reflected, we cannot conceive that Congress would wish to deny the benefit of the rule so established to a party who previously had filed an appeal based on a colorable theory of appellate jurisdiction and who was actively litigating that appeal on the effective date of the amendment. Accordingly, we hold that we have jurisdiction over this appeal under 9 U.S.C.A. § 15(a). *See also Delta Computer*, 879 F.2d 662 (applying section 15(b) retroactively in deciding that the court did not have jurisdiction over an appeal granting a stay pending arbitration); *Nichols v. Stapleton*, 874 F.2d 707 (9th Cir.1989) (same); *Turboff v. Merrill Lynch*, 867 F.2d 1518 (5th Cir.1989) (same).

## IV.

The district court held that the trustee was not bound by the Customer Agreement because neither it, nor the creditors it represents, signed the agreement. Our review of this legal precept is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir.1981).

The Arbitration Act applies to "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction. . . ." 9 U.S.C.A. § 2. It is clear that the Customer Agreement is a contract involving commerce and therefore falls within the Act's parameters.

> Section 3 of the Act further states that in any suit or proceeding . . . brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had *in accordance with the terms of the agreement*. . . .

9 U.S.C.A. § 3 (emphasis added). Should one of the parties be recalcitrant in partici-

pating in arbitration, even after a stay is imposed under section 3, the Act provides, *inter alia*, that any district court that would otherwise have jurisdiction over the dispute *"shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C.A. § 4 (emphasis added).

The arbitration clause in the Customer Agreement provides, in pertinent part, that:

It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc....

106a–107a.[3]

■ Thus, the Customer Agreement purports to compel arbitration over all controversies that arise out of the business relationship between Merrill Lynch and Monge. The question with which we are presented is whether the trustee is bound by that agreement signed by the debtor before entering Chapter 11 bankruptcy. We hold that the trustee-plaintiff stands in the shoes of the debtor for the purposes of the arbitration clause and that the trustee-plaintiff is bound by the clause to the same extent as would the debtor. We also hold that the trustee's section 544(b) claims are not arbitrable under the arbitration clause because they are not derivative of the debtor and the trustee is accordingly not bound

by the Customer Agreement with respect to them.

We start our analysis with the principle that a trustee is generally bound by the debtor's non-executory contracts.[4] *See Jenson v. Continental Financial Corp.*, 591 F.2d 477, 482 (8th Cir.1979) (stating that a security agreement was not executory under the Bankruptcy Act, could not be rejected by the trustees, and therefore "remains valid to secure any recovery by the plaintiffs"); *Matter of Chicago, Rock Island & Pacific R. Co.*, 604 F.2d 1002 (7th Cir.1979) (under the Bankruptcy Act, stating that the trustee could not reject a contract of guaranty because it was not an executory contract, thus implying that the trustee remained bound by it). In fact, were the trustee considered a wholly different entity from the pre-petition debtor and generally free to disavow the debtor's pre-petition contracts, 11 U.S.C.A. § 365, which allows the trustee to reject executory contracts, would be wholly redundant. *See NLRB v. Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984) ("If the [debtor-in-possession] were a wholly 'new entity' [from the pre-petition debtor], it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place."). We see no reason to make an exception for arbitration agreements to the general rule binding trustees to pre-petition non-executory contracts,[5] especially in face of the strong federal policy favoring arbitration, *see Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plym-*

---

**3.** Neither the validity of the Customer Agreement nor its arbitration clause has been questioned.

**4.** The trustee sought leave of the bankruptcy court to reject the Customer Agreement, but the bankruptcy court held that the Customer Agreement was not an executory contract. 120a–132a. That decision was not appealed. There is support for this position. *Societe Nationale Algerienne v. Distrigas Corp.*, 80 B.R. 606, 608–10 (D.Mass.1987); *see* Westbrook, *The Coming Encounter: International Arbitration and Bankruptcy,* 67 Minn.L.Rev. 595, 623 n. 112 (1983).

**5.** *See Matter of R.M. Cordova Intern., Inc.*, 77 B.R. 441, 449–51 (Bankr.D.N.J.1987) (rejecting a Chapter VII trustee's motion to assume various commodity contracts and enforcing their compulsory arbitration provisions to determine damages arising from their breach); *In re Morgan*, 28 B.R. 3, 5 (9th Cir.1983) (implying that the trustee is also bound by debtor's pre-petition arbitration agreement); *see also Distrigas*, 80 B.R. at 609–10 (holding that the arbitration provision of a pre-petition contract survives rejection of the contract by the Chapter XI debtor and ordering arbitration).

*outh, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985), and the Arbitration Act, which puts arbitration agreements on the same footing as other contracts. *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974).

We also find support for our conclusion that arbitration agreements should be treated like other contractual commitments in those cases which have held that a debtor-in-possession in a reorganization case is bound by a pre-petition agreement to arbitrate. *See Fallick v. Kehr,* 369 F.2d 899, 904 (2d Cir.1966) (binding a bankruptcy debtor under the Bankruptcy Act to a pre-petition arbitration agreement); *In re Morgan,* 28 B.R. 3, 5 (9th Cir. BAP 1983) ("A reorganization debtor-in-possession is bound by the mandatory arbitration provisions contained in a contract where he makes a claim arising out of that contract against a non-creditor."); *In re Guy C. Long, Inc.,* 90 B.R. 99 (E.D.Pa.1988) (concluding that an arbitration clause was enforceable against a Chapter 11 debtor); *Barber Greene Co. v. Zeco Co.,* 17 B.R. 248, 250 (Bankr.D.Minn.1982) (enforcing arbitration clause against a Chapter 11 debtor); *In re Cres Rivera Concrete Co.,* 21 B.R. 155 (Bankr.D.N.M.1982) (ordering arbitration against a Chapter 7 debtor); *cf. Bildisco,* 465 U.S. at 528, 104 S.Ct. at 1197; *In re Diaz Contracting Inc.,* 817 F.2d 1047 (3d Cir.1987) (enforcing a forum selection clause in an adversary proceeding brought by a Chapter 11 debtor on the contract); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190 (3d Cir.), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78

L.Ed.2d 315 (1983) (enforcing a forum selection clause in an action by a Chapter 11 debtor). We see no reason why the trustee should be treated any differently. *See* 11 U.S.C.A. § 1107(a) (a debtor-in-possession generally has all the rights and duties of a trustee). Thus, we conclude that in actions brought by the trustee [6] as successor to the debtor's interest under section 541,[7] the "trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Collier on Bankruptcy,* ¶ 323.02[4]. One such defense is a contractual arbitration provision. Accordingly, we hold that the trustee is bound to arbitrate all of its claims that are derived from the rights of the debtor under section 541.

Hays' argument to the contrary relies primarily on *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977). In that case, the Chapter 11 trustee's complaint contained several causes of action unique to the trustee under the Bankruptcy Act and not derivative of the bankrupt, 548 F.2d at 436, and therefore offers no support for Hays with respect to the non-section 544(b) claims. The *Allegaert* court also held that several of the trustee's securities claims were not arbitrable because of various policy concerns underlying the securities acts which were then thought to make their resolution by arbitration inappropriate.[8] These concerns do not address

---

**6.** The trustee is the representative of the estate, 11 U.S.C.A. § 323(a), and it (or the debtor-in-possession) is authorized, with or without court approval, to "commence and prosecute any action or proceeding in behalf of the estate in any tribunal." Bankr. Rule 6009, 11 U.S.C.A.; *see also* 11 U.S.C.A. § 323(b).

**7.** Section 541 defines the property included in the estate which includes all legal and equitable interests of the debtor. 11 U.S.C.A. § 541. These legal and equitable interests include causes of action. *Collier on Bankruptcy,* ¶ 323.02[1], p. 323–5. Section 1334(d) gives the district court exclusive jurisdiction over all property of the estate. 28 U.S.C.A. § 1334(d).

"Although [§ 541] includes choses in action and claims by the debtor against others, the legislative history indicates that it was not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *Collier,* ¶ 323.02[1], pp. 323–6.

**8.** The court held that the seven securities claims asserted by the plaintiff (four claims involved the Securities and Exchange Act of 1934, and three the Securities Act of 1933) were not arbitrable because enforcement of the arbitration clause would be inconsistent with the statutes giving rise to them. The court analogized to private antitrust claims which had also been held by that court to be inappropriate subjects

whether a trustee in bankruptcy is generally bound by a pre-petition arbitration agreement with respect to section 541 claims. However, by relying on these policy concerns, the court implied that the trustee would otherwise be bound by the arbitration clauses signed by the debtor before the filing of his petition and to this extent *Allegaert* offers support for our conclusion.

While we reject Hays' primary argument that it is free to ignore the Customer Agreement altogether, we do agree with it that the two claims brought under the trustee's section 544(b) powers are not subject to arbitration. Section 544(b) provides that:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C.A. § 544(b). Claims asserted by the trustee under section 544(b) are not derivative of the bankrupt. They are creditor claims that the Code authorizes the trustee to assert on their behalf. The Supreme Court has made it clear that it is the *parties* to an arbitration agreement who are bound by it and whose intentions must be carried out. *Mitsubishi,* 473 U.S. at 625, 105 S.Ct. at 3352 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)) ("As this Court recently observed, '[t]he preeminent concern of Congress in passing the Act was to enforce private arbitration agreements into which the parties had entered'...."); *Scherk,* 417 U.S. at 519–20, 94 S.Ct. at 2457–58. Thus there

is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it. In this respect our conclusion is supported by *Allegaert,* 548 F.2d at 436 (With respect to those of the trustee's claims, such as fraudulent and preferential transfers, that arose under the Bankruptcy Act, the court stated that "[t]hese are statutory causes of action belonging to the trustee, not to the bankrupt, and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee enforces."). It follows that the trustee cannot be required to arbitrate its section 544(b) claims and that the district court was not obliged to stay them pending arbitration.

Having concluded that the trustee is bound by the arbitration clause of the Customer Agreement with respect to claims it inherited from the debtor, though not with respect to its other claims, we now inquire whether the Bankruptcy Code invested the district court with discretion to refuse to enforce that clause with respect to the claims derived from the debtor.

## V.

### A.

The district court, citing our decision in *Zimmerman,* concluded that it had discretion by virtue of the Bankruptcy Code to decline to enforce the arbitration clause. It did not, however, explain what factors led it to exercise its discretion against enforcement of the parties' bargain. That deficiency in the court's opinion renders the exercise of its discretion essentially unreviewable and would alone justify a remand. Moreover, given the strength of the national policy favoring arbitration, as

---

for arbitration. The *Allegaert* court also relied on factors such as the "public interest" in the dispute and the degree to which the nature of the evidence makes a judicial forum preferable in rendering a decision.

Given the change in the legal landscape since 1977, these concerns are no longer valid. As to its first rationale, the Supreme Court has since held that arbitration clauses are enforceable in antitrust, *Mitsubishi,* 473 U.S. 614, 105 S.Ct. 3346. Securities and Exchange Act of 1934,

*McMahon,* 482 U.S. 220, 107 S.Ct. 2332, and in Securities Act of 1933 cases. *Rodriguez de Quijas v. Shearson,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). The *Allegaert* court's second rationale has subsequently been rejected by the Supreme Court. *See infra* Part V, Section B. Finally, *Allegaert* was decided before the enactment of the Bankruptcy Reform Act of 1978, the 1984 Amendments, and the above-cited recent Court decisions reaffirming the strong federal policy favoring arbitration.

reflected in the recent Supreme Court cases, we do not believe that the present record would justify an exercise of discretion against enforcement. *See e.g., Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 2244–45, 101 L.Ed.2d 22 (1988). Nevertheless, we will not remand this matter for further development of the record or further articulation of the district court's reasoning because we conclude that it committed a more fundamental error in determining that it had discretion to exercise.

Our analysis of this issue is dictated by *Shearson/American Exp. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The Court there held that the Arbitration Act required a district court to stay claims under RICO and section 10(b) of the Securities and Exchange Act of 1934 and to order their submission to arbitration under a clause in a broker-client agreement similar to the one currently before us. The Court initially focused on the language in the Arbitration Act which provides that arbitration agreements "*shall* be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2 (emphasis added). It stressed that, if an issue is arbitrable under the agreement, the Arbitration Act leaves a court without discretion; the Act dictates that the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C.A. § 3 (emphasis added). The court then held:

> The Arbitration Act thus establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24[, 103 S.Ct. 927, 941, 74 L.Ed.2d 765] (1983), requiring that "we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds Inc. v. Byrd*, [470 U.S.]

at 221[, 105 S.Ct. at 1242]. This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights....

> *The Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims.* Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. *The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.* See [473 U.S.] at 628[, 105 S.Ct. at 3354]. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent "will be deducible from [the statute's] text or legislative history," *ibid.*, or from an inherent conflict between arbitration and the statute's underlying purposes. See *id.* at 632–37[, 105 S.Ct. at 3356–59]; *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. at 217[, 105 S.Ct. at 1240].

> To defeat application of the Arbitration Act in this case, therefore, the McMahons must demonstrate that Congress intended to make an exception to the Arbitration Act for claims arising under RICO and the Exchange Act, an intention discernible from the text, history, or purposes of the statute.

482 U.S. at 226–27, 107 S.Ct. at 2337 (emphasis added).

Thus, the district court lacked the authority and discretion to deny enforcement of the arbitration clause unless Hays had met its burden of showing that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of an arbitration clause in a case of this kind, that is, a non-core proceeding [9]

**9.** The non-§ 544(b) claims made by Hays involve non-core proceedings because they do not involve: the administration of the estate; the allowance of claims against the estate; the voidance of preferences or fraudulent transfers; determinations as to dischargeability of debts; priorities of liens; or confirmation of a plan, etc. *See* 28 U.S.C. § 157(b)(2); *see also Matter*

*of Wood*, 825 F.2d 90, 97 (5th Cir.1987) (If the proceeding involves a right created by federal bankruptcy law, or is one which would only arise in bankruptcy, it is a core proceeding. If, however, it does not involve a substantive right created by the bankruptcy laws and would exist outside of bankruptcy, it is a non-core proceed-

brought by a trustee to enforce a claim of the estate in a district court.[10] Since determining whether such a "contrary congressional command" exists involves the interpretation of statutes, legislative history, and the purposes underlying congressional acts, our review on this issue is plenary.

### B.

Hays has pointed to no provisions in the text of the bankruptcy laws, and we know of none, suggesting that arbitration clauses are unenforceable in a non-core adversary proceeding in a district court to enforce a claim of the estate. To the contrary, as we have already noted, the text of the Bankruptcy Code embodies the principle that pre-petition contract rights are enforceable in a bankruptcy proceeding except to the extent the Code specifically provides otherwise and there are no contrary provisions applicable to this situation.

Similarly, Hays has identified no legislative history indicating that this kind of proceeding was intended to be an exception to the mandate of the Arbitration Act.[11] Rather, its argument is that the purposes underlying the Bankruptcy Code would be

offended if arbitration were to be compelled in this case. Its articulation of the bankruptcy policy that must override the policy favoring arbitration, however, is couched in generalities that lack persuasive force at least in the context of a non-core adversary suit brought to enforce a claim of the estate in a district court.

Hays asserts that the Bankruptcy Code is designed to "consolidate jurisdiction ove: property of the debtor" and reflects a "pc.icy favoring a unified and consistent exercise of jurisdiction and supervision over a debtor and the debtor's estate." Whatever relevance these observations may have in other bankruptcy contexts, they do not help Hays here. While one can argue with some force that the Bankruptcy Reform Act of 1978 was intended to focus all bankruptcy related matters in a single bankruptcy court with power of summary disposition, the 1984 Amendments confer on the *district court* original *but not exclusive* jurisdiction over suits of this character.[12] 28 U.S.C.A. § 1334(b). Thus, it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court.[13]

---

ing even though it may be related to bankruptcy.).

**10.** Under *McMahon,* the district court will never have discretion in deciding whether to enforce an arbitration clause under the Arbitration Act because if the subsequent act does supercede the Arbitration Act, the court will be bound to follow the direction of that subsequent enactment. Only if the subsequent enactment specifically gives discretion to the district court in determining whether to order arbitration would there be discretion for the court to exercise.

**11.** The only legislative history cited in Hays' brief indicates that an arbitration proceeding against the debtor, like all other kinds of such proceedings, is subject to the automatic stay provisions of the Code. 11 U.S.C.A. § 362; H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6297. If anything, we believe this legislative history cuts the other way. Where Congress has specifically indicated subjugation of arbitration to the dictates of the bankruptcy laws in one situation, but not in another, we must presume that Congress neither intended to subjugate arbitration in the second instance, nor saw the two laws as conflicting in this respect.

**12.** We note that even if exclusive jurisdiction to hear such actions had been given to the district courts, the question would still remain under *McMahon* whether there is affirmative evidence that Congress intended to "preclude a waiver of judicial remedies" in favor of arbitration. 482 U.S. at 227, 107 S.Ct. at 2337. The Securities and Exchange Act of 1934 contains a grant of exclusive jurisdiction to district courts and an "anti-waiver" provision, but this was found to be no bar to enforcement of the Arbitration Act. *See also Rodriguez,* 109 S.Ct. at 1921.

**13.** In fact, some state-law causes of action, in some circumstances, must be heard in state court, *see* 28 U.S.C.A. § 1334(c)(2), and personal injury and wrongful death actions cannot be tried in the bankruptcy court. *See* 28 U.S.C.A. § 157(b)(5). Thus, Congress could not have intended that all claims relating to title 11 be heard in one bankruptcy court. Indeed, if Congress had wanted to keep the 1978 bankruptcy scheme, it could have made bankruptcy judges Article III judges. *See* 130 Cong.Rec.H. 7,490 (daily ed. June 29, 1984) (statement of Congressman Edwards) ("The conference report before us today turns back the clock, and it does so more than just 6 years, by diminishing the status of bankruptcy judges and their powers from what they were before the 1978 legislation....

The absence of conflict between the two acts in the context of this case is perhaps best illustrated by examining the effect on the underlying core proceeding of the choices available to the district judge when he decided the motion before him. Under the 1984 Amendments, a denial of the motion to compel arbitration could lead either to full scale litigation of this non-core, adversary proceeding in the district court, *see* 28 U.S.C.A. §§ 157(a) & 1334(b), or to referral of that proceeding to the bankruptcy court for a recommendation followed, upon objection, by *de novo* review in the district court.[14] *See* 28 U.S.C.A. § 157(c)(1). Only after these proceedings were exhausted would the value of the estate's claim be established and subsequently realized for distribution to creditors in the core proceeding. On the other hand, a grant of the motion to compel arbitration in this proceeding would have led to its resolution in arbitration with enforcement of the award, if necessary, by the district court, *see* 9 U.S.C.A. §§ 9-11, and with the proceeds thereof being distributed in the core proceeding. We fail to perceive, and Hays has not shown, any greater adverse impact on the purposes of the Bankruptcy Code as amended in 1984 from a grant of the motion to compel and stay arbitration than from its denial.

Moreover, even if there were some potential for an adverse impact on the core proceeding, such as inefficient delay,[15] duplicative proceedings, or collateral estoppel effect, Hayes has not shown that it would be substantial enough to override the policy favoring arbitration. In *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court, in holding that an arbitration agreement was enforceable as to pendant state-law claims notwithstanding the presence of then unarbitrable federal claims, rejected arguments concerning both the possible inefficiencies resulting from bifurcated proceedings,[16] and any possible collateral-estoppel effects of the subsequent arbitration on issues of exclusive federal jurisdiction remaining before the district court. As to the collateral estoppel issue, the Court reasoned that "a stay of [arbitral] proceedings ... is [not] necessary to protect the federal interest in the federal-court proceeding, ... the formulation of collateral-estoppel rules affords adequate protection to that interest." 470 U.S. at 222, 105 S.Ct. at 1243. The Court observed that in *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984), it had "recognized that arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings.... [since the court] may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding." *Id.* at 223,

[T]he bill limits the bankruptcy court's jurisdiction substantially because of the unwillingness to grant the bankruptcy judges adequate status in the federal system to enable them to exercise complete jurisdiction.... In short the Conference Report ... undoes the court reform accomplished in 1978.").

**14.** A bankruptcy court cannot issue final orders or judgments over non-core proceedings unless the parties assent. 28 U.S.C.A. § 157(c)(2).

**15.** Many authorities have argued that arbitration is a less costly and quicker dispute resolution process. *See Bankruptcy Law—Arbitration Agreements in Bankruptcy Proceedings: The Clash Between Policies and the Proper Forum for Resolution*, 57 Temp.L.Q. 855, 879 n. 189. Indeed, in both *Mitsubishi* and *McMahon*, the Court made it clear that:

[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights

afforded by the statute; it only ... trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.

473 U.S. at 628, 105 S.Ct. at 335. In *McMahon*, the Court recently emphasized this point stating that "we have concluded that the streamlined procedures of arbitration don't entail any consequential restriction of substantive rights." 482 U.S. at 232, 107 S.Ct. at 2340.

**16.** *See Byrd*, 470 U.S. at 217, 105 S.Ct. at 1240 ("the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims ..., even where the result would be the possibly inefficient maintenance of separate proceedings in separate forums."). *See also Matter of Hart Ski Mfg. Co.*, 22 B.R. 763, 765 (D.Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir.1983) ("The financial disadvantage or inconvenience to Hart in resolving the dispute through international arbitration does not justify a denial of Hennecke's contractual right to such a forum.").

105 S.Ct. at 1243. We see no reason why the same rationale should not also serve to protect the "federal" interest in preserving any non-arbitrable bankruptcy issues/claims for resolution by the district court or the bankruptcy court, as the case may be.

In *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983), the Court, in evaluating the district court's decision to stay a federal suit out of deference to parallel litigation in state court, stated that "[u]nder the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Hence, the mere existence of creditors in the core bankruptcy proceeding who might be indirectly affected by the arbitration decision and who were not parties to the Customer Agreement does not require the denial of Merrill Lynch's motion.

Our view that Congress does not see arbitration in a non-core adversary bankruptcy proceeding filed by the trustee in the district court as an anathema to its post–1984 bankruptcy policy is further supported by its subsequent enactment of the Judicial Improvements Act in 1988. In that act, Congress specifically allows certain district courts to authorize by local rule either voluntary or compulsory arbitration, or both in certain adversary bankruptcy proceedings.[17] Regardless of whether the arbitration is voluntary, the losing party may demand a *de novo* review by the district court. 28 U.S.C.A. § 655. Although section 651(b) states specifically that these arbitration provisions are not to affect title 9, it does show that arbitration, and any delay associated with it, does not necessarily offend the purposes underlying the bankruptcy laws concerning adversarial proceedings. In fact, under the Arbitration Act, a *de novo* review would not occur, *see*

9 U.S.C.A. §§ 9–11. Thus title 9 arbitration would involve less delay and expense to the estate than the scheme contemplated by the Judicial Improvements Act.

In its argument, Hays invokes our decision in *Zimmerman*, 712 F.2d at 58, 59. It cannot persuasively do so, however, for two reasons: *Zimmerman's* reasoning is founded on the statutory scheme of the Bankruptcy Reform Act of 1978 before the 1984 Amendments, and it was decided before *McMahon* and other recent Supreme Court arbitration cases. *Zimmerman's* analysis begins with the evil the Reform Act was designed to address, the dichotomy between plenary and summary jurisdiction. The court then emphasized that the solution adopted by Congress involved a new allocation of jurisdiction that permitted " 'all matters and proceedings that arose in connection with bankruptcy cases' [to be] tried in one action before the bankruptcy court." 712 F.2d at 59. It was this reallocation which the court found to be in conflict with the Arbitration Act. As a result of *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (generally ruling the jurisdictional provision of the Bankruptcy Reform Act of 1978 unconstitutionally conferred Article III judicial powers upon Article I bankruptcy judges without giving them Article III-mandated protections of life tenure or guaranteed salary), however, the 1978 approach of consolidating all power in the bankruptcy court is no longer the law and the 1984 Amendments have substituted a new scheme. Generally, as mentioned *supra*, the new approach *requires* various state-law claims, 28 U.S.C.A. § 1334(c)(2), and personal injury and wrongful death claims, 28 U.S.C.A. § 157(b)(5), to be litigated in a state court or a district court. It will also permit a *de novo* review in the district court of various non-core proceedings in the bankruptcy court. Consequently, un-

---

**17.** Certain specified district courts (including the Eastern District of Pennsylvania) may "require the referral to arbitration of any civil action pending before it if the relief sought consists only of money damages not in excess of $100,000 or such lesser amounts as the district court may set, exclusive of interest and costs." 28 U.S.C.A. § 652(a)(1)(B). Other district courts to be specified later by the Judicial Conference of the United States may only allow the referral to arbitration upon consent of the parties. 28 U.S.C.A. § 652(a)(1)(A).

like the pre–1984 bankruptcy scheme, the current one virtually requires some bankruptcy-related proceedings to proceed outside the bankruptcy court. Thus, the congressional policy of consolidating all bankruptcy-related matters in the bankruptcy court, relied upon by us in *Zimmerman,* is no longer applicable.

Our opinion in *Zimmerman* also predates a series of Supreme Court opinions interpreting the Arbitration Act in a number of new contexts. *See Rodriguez de Quijas v. Shearson/American Exp., Inc.,* —— U.S. ——, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); *McMahon,* 482 U.S. 220, 107 S.Ct. 2332; *Mitsubishi,* 473 U.S. 614, 105 S.Ct. 3346; *Byrd,* 470 U.S. 213, 105 S.Ct. 1238. In particular, *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), upon which the *Zimmerman* court explicitly relied, has recently been overturned by *Rodriguez de Quijas,* 109 S.Ct. 1917. These cases establish that the Arbitration Act represents a clear congressional rejection of judicial skepticism regarding the utility of arbitration [18] and a clear congressional mandate that private parties who contract for arbitration, as a more efficient method of dispute resolution, shall not have their bargains frustrated.[19] *See e.g., Byrd,* 470 U.S. at 220, 105 S.Ct. 1241. Indeed, many of the considerations traditionally considered by the courts in using their pre-*McMahon* discretion to deny a motion to compel arbitration have been specifically repudiated by the Court, and others traditionally considered important have not been mentioned. In *Mitsubishi,* for example, the Court rejected as a basis for denying arbitration the "potential complexity" of legal or factual antitrust issues, the composition of the arbitration panel, the remedial and deterrent function of the antitrust laws

(including its treble damages and private attorney general aspects), and the impact of anti-trust laws on national markets.[20] 473 U.S. at 632–40, 105 S.Ct. at 3356–61. Notable by its absence in *Mitsubishi* was any concern that an arbitral forum does not provide adequate discovery in complex antitrust cases. In *McMahon,* the Court repeated much of its reasoning in *Mitsubishi* and applied it to RICO and the Securities and Exchange Act of 1934.

In *Zimmerman,* we concluded our analysis with the following summary:

In the instant case, as in *Wilko,* the competing policies, both representing important congressional concerns, are not easily reconcilable. They are both equally specific and focused and in giving a preference for either, the effectiveness of the other will be proportionately diluted. Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. *See* 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act.

712 F.2d at 59.

We have already stressed that the aspects of the Bankruptcy Reform Act of

---

18. "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi,* 473 U.S. at 626–27, 105 S.Ct. at 3353–54.

19. *Lingle v. Norge Division of Magic Chef,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), is not to the contrary. At oral argument we requested supplemental briefing on *Lingle's* impact, if any, on the issues in this case. We are

satisfied that *Lingle* has no effect on our conclusion that all issues, other than the trustee's claims under § 544(b) of the Bankruptcy Code (counts V and VI of the amended complaint), are subject to arbitration.

20. One court has stated that "it would be unrealistic indeed to argue that bankruptcy principles are qualitatively more fundamental to our capitalistic democratic system than either the securities laws or anti-trust policy." *Distrigas,* 80 B.R. at 613.

1978 that caused it to conflict with the Arbitration Act are not present in this case with respect to the Bankruptcy Code as amended in 1984. Equally as important, given the recent Supreme Court cases concerning the Arbitration Act, we can no longer subscribe to a hierarchy of congressional concerns that places the bankruptcy law in a position of superiority over that Act. The message we get from these recent cases is that we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code. Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration—certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.[21]

Finally, we note that our holding today draws substantial support from the forum selection clause jurisprudence of this court. As the Supreme Court has observed, "[a]n agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause." *Scherk*, 417 U.S. at 519, 94 S.Ct. at 2457. Moreover, based on the recent Supreme Court arbitration cases we have previously reviewed, the national policy favoring enforcement of agreements to arbitrate is at least as strong or stronger than that favoring enforcement of forum selection agreements. It is therefore significant that this court has twice found no significant conflict between the policies underlying the bankruptcy laws and enforcement of a forum selection agreement.

In both *Coastal Steel*, 709 F.2d 190, and *In re Diaz*, 817 F.2d 1047, this court enforced forum selection clauses in actions brought by a bankruptcy debtor. In *Coastal Steel*, the court enforced a clause requiring the debtor to bring suit in an English court under the 1978 Bankruptcy Scheme. In reaching this conclusion, the court stated that "[n]othing in the legislative history of the Bankruptcy Code has been called to our attention suggesting that Congress intended to make a change in the public policy favoring forum selection clauses which is manifested in the Federal Arbitration Act ... or in the common law announced in *The Bremen* [*v. Zapata*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513] and similar state and federal cases." 709 F.2d at 202.[22] The resolution of Hays' claims in arbitration within the United States is not any more onerous or offensive to the bankruptcy laws than ordering a debtor to resolve its claims across the Atlantic.

In *In re Diaz*, the Chapter 11 debtor instituted an adversary proceeding in the bankruptcy court to recover on a pre-petition contract to which it was a party. The court held that the defendant's motion to dismiss the claims based on the forum selection clause, requiring suit to be brought in the courts of the State of New York, was erroneously denied by the District

---

**21.** We find substantial support for our conclusion in the sparse case law on the specific issue before us. *See In re Hart Ski*, 18 B.R. 154 (Bankr.D.Minn.), opinion amended, 22 B.R. 762, *aff'd*, 22 B.R. 763 (D.Minn.1982), *aff'd*, 711 F.2d 845 (8th Cir.1983) (enforcing an arbitration clause in a proceeding brought by the Chapter XI debtor); *In re Morgan*, 28 B.R. 3 (enforcing arbitration clause in an adversary action brought by a Chapter XI debtor); *In re Guy C. Long, Inc.*, 90 B.R. 99, 102 (concluding that an arbitration clause should be enforced against a Chapter XI debtor because it "will not significantly affect the legitimate interests of the debtor"). *In re Cres Rivera*, 21 B.R. at 157; *See also Barber Greene Co. v. Zeco Co.*, 17 B.R. 248

(Bankr.D.Minn.1982) (enforcing an arbitration clause in an adversary action by a Chapter XI debtor).

**22.** The *Coastal Steel* court's determination (and the *In re Diaz* court's reliance on that determination) that orders declining to enforce forum selection clauses are immediately appealable has been recently overruled by the Supreme Court decisions in *Lauro Lines v. Chasser*, —— U.S. ——, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989), and *Gulfstream*, 485 U.S. 271, 108 S.Ct. 1133. However, that aspect of the decision dealing with the interplay of forum selection clauses and the Bankruptcy Code remains valid.

Court for the District of New Jersey. The debtor in *In re Diaz* argued that the cost and delay in pursuing the action in New York would adversely affect the success of its reorganization bid. The court found that the debtor had not met its heavy burden of proving unreasonableness and injustice which the Court in *The Bremen* required in order to vitiate a forum selection clause. 817 F.2d at 1052–53. The *In re Diaz* court characterized the *Coastal Steel* decision as rejecting

> the notion that the policy of the bankruptcy court of facilitating the collection and distribution of debtor estates in itself exempts that court from the public policy favoring the enforceability of forum selection clauses. Instead we observed that "[a]t best the grant to protective federal jurisdiction over proceedings related to title 11 is one circumstance to be taken into account in making the [*Bremen's*] unreasonableness determination."

817 F.2d at 1051 n. 9 (quoting *Coastal Steel*, 709 F.2d at 202) (citations omitted).

Thus, both *Coastal Steel* and *In re Diaz* indicate that any bankruptcy-related concerns about delay and cost in the enforcement of a forum selection clause are not alone sufficient to overcome the policy favoring enforcement of such clauses, especially in non-core proceedings where *de novo* review is available in the district court. For the purposes of this appeal, we do not see any relevant distinction between a forum selection clause and an arbitration clause.[23]

### VI.

For the foregoing reasons, we will reverse the order of the district court and remand for further proceedings consistent with this opinion.

---

**23.** "An agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of the suit but also the procedure to be used in resolving the dispute." *Scherk*, 417 U.S. at 519, 94 S.Ct. at 2457.