## In re STATEWIDE REALTY COMPANY, Debtor.

### Bankruptcy No. 92–24582.

United States Bankruptcy Court,
D. New Jersey.

Oct. 22, 1993.

Michael R. Griffinger, Frank J. Vecchione, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for debtor and debtor in possession.

Mark J. Hyland, Colin T. Burke, Seward & Kissel, New York City, Waters, McPherson, McNeil, P.C., Secaucus, NJ, for Hilton Intern. Co. and Vista Intern. (NJ) Inc.

## DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Before this Court is the motion for Partial Summary Judgment filed by Statewide Realty Company, debtor and debtor in possession, ("Debtor"). Hilton International Co. and Vista International (NJ) Inc. ("Hilton International") filed a cross motion to modify the automatic stay and compel debtor to arbitrate before the American Arbitration Association.

Oral argument of counsel and the pleadings and legal memoranda submitted by the parties having been considered, the following constitutes the court's findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) & (C). The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

This Court has decided in favor of compelling the Debtor to arbitrate, and therefore, the Court does not reach a determination on Debtor's Motion for Partial Summary Judgment.

## STATEMENT OF FACTS

Debtor is the owner of the Newark Airport Hilton, formerly known as the Newark Airport Vista Hotel, a 376–room hotel located on Routes 1 and 9 adjacent to Newark International Airport ("Hotel").

On November 19, 1984, Debtor entered into a management agreement ("Agreement") with Hilton International in which Hilton International agreed to manage and operate the Hotel when its construction was completed. Under the terms of the Agreement, Hilton International was to receive a basic management fee of 3% of

revenues and an incentive fee upon the fulfillment of certain conditions. The Agreement provided for an initial operating term of twenty years with an option to renew for three consecutive five-year periods, through December 31, 2024.

The Hotel was opened on October, 1988. Not long thereafter, and continuing up through the date of the commencement of the Chapter 11 case, significant disputes arose between the Debtor and Hilton International with regard to operation of the Hotel.

In July 1991, Hilton International commenced an arbitration proceeding before the American Arbitration Association ("AAA") against the Debtor and its former partners pursuant to Article XIV of the Management Agreement which provides:

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof which notice shall contain sufficient information concerning the prospective purchaser to enable Hilton International to make an informed judgment as to the satisfaction of conditions (a) and (b) of this paragraph.

Hilton International sought a declaration with respect to all disputes between the parties concerning the management of the Hotel and to recover certain deferred management fees allegedly owed to Hilton International pursuant to an amendment to the Agreement dated June 19, 1990.

In the arbitration proceeding the Debtor filed a counterclaim which asserted mismanagement of the Hotel by Hilton International. The arbitration proceeded to the point of selection of an arbitrator and commencement of arbitration. However, prior to commencement of the bankruptcy, the parties voluntarily stayed the arbitration in an effort to settle their dispute. (Hyland Aff. ¶ 5).

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 8, 1992, and continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. Hilton International was listed on Debtor's schedule of liabilities with a claim in the amount of $391,195.

On October 19, 1992, Hilton International Co. filed a proof of claim in the amount of not less than $150,000 for services rendered to or on behalf of the Debtor prior to the Petition Date. Also on that date, Vista International (NJ), Inc. filed a proof of claim in the amount of not less than $1,377,544.42 for services rendered to or on behalf of the Debtor prior to the Petition Date.

On or about October 30, 1992, the Debtor moved pursuant to 11 U.S.C. § 365 to reject the Management Agreement. After a protracted hearing, and over the objection of Hilton International and the Debtor's primary secured creditor, the Order rejecting the Agreement was entered on February 19, 1993. Pursuant to that Order Hilton International was given thirty days to file an amended proof of claim against the estate for damages arising from the rejection.

On March 18, 1993, Hilton International filed an amended and restated proof of claim against the Debtor in the amount of not less than $7,574,075.30 due under the Management Agreement and as damages due to the rejection of the Management Agreement. In April, 1993 Hilton International filed an amended arbitration demand which removed the Debtor as a party and requested that the arbitration proceed solely against its former partners. The Debtor objected to the amended demand on the basis that this court's rejection of the Agreement in effect eliminated the contractual provision for arbitration. The AAA rejected Debtor's argument and directed that arbitration proceed against the former partners. (Hyland Aff. ¶ 8.) On June 25, 1993 the Debtor filed its answer and counterclaim to Hilton International's proof of claim. At the same time the Debtor further filed an objection to the Hilton International Proof of Claim. The Motion for Partial Summary Judgment was filed approximately four (4) days thereafter. In that motion Debtor sought an Order from the court granting that portion of Debtor's Application that sought to expunge Hilton International's claim as a matter of law based upon the express terms of the Management Agreement. In response Hilton International filed the instant motion to compel arbitration.

On or about August 13, 1993 the Debtor filed its Second Amended Plan of Reorganization and Second Amended Disclosure Statement. The Plan provides that unsecured creditors will receive a dividend of 15%. The dividend to be paid will not be affected by the amount of the claims in the unsecured creditor class. Thus, the amount of the dividend does not depend on resolution of the Hilton International claim. Rather, the amount contributed by the Debtor's Former and/or Current General Partners will be adjusted depending on the size of the allowed Hilton International claim. (Second Amended Disclosure Statement at 26.)

## DISCUSSION

### I. Enforceability of the Arbitration Clause

The Federal Arbitration Act requires a federal court to enforce valid arbitration agreements in commercial contracts and severely restricts the grounds for vacating or modifying arbitration awards. Section 2 provides:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (West 1970). Upon application by a party the court shall stay its own proceedings and order the parties to proceed to arbitration pursuant to sections 3 and 4. Id.

As noted, Hilton International commenced a proceeding before the AAA in July, 1991. The Debtor had participated in the selection of an arbitrator and had commenced discovery. The arbitration was subsequently stayed voluntarily pending negotiations. However, after commencement of the Chapter 11 case, Hilton International filed an amended demand for arbitration with the AAA to remove the Debtor as a party to the proceeding in order to enable arbitration to continue against Debtor's former partners. The arbitration remains an active and ongoing proceeding.

The amended claim of Hilton International is presently before the court because the Debtor filed an answer and counterclaim to the amended claim and simultaneously moved to either expunge or reduce the claim.[1] Shortly thereafter the Debtor filed a motion for summary judgment, urging that the claim should be expunged as a matter of law in consideration of the clear and unambiguous terms of the Management Agreement. Hilton International responded by cross moving for relief from the stay and to compel arbitration. Thus, the issue squarely before the court is whether this Court should give effect to the arbitration clause contained in the Management Agreement so as to permit the claims between the Debtor and Hilton International to be resolved by arbitration. As set forth herein the court determines that no conflict with the Bankruptcy Code arises from enforcement of the arbitration clause, and as a consequence, the court does not have discretion to refuse to permit the arbitration proceeding to resume.

█ The Federal Arbitration Act establishes a strong federal policy which favors arbitration, and which requires that agreements to arbitrate are rigorously enforced even where a party bound by such an agreement asserts a claim based on statutory rights. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227, 107

S.Ct. 2332, 2337, 96 L.Ed.2d 185, 194 (1987). However,

> The Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent 'will be deductible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes.

*McMahon*, Id., 482 U.S. at 226–27, 107 S.Ct. at 2337 (citations omitted).

The controlling precedent in this circuit for a determination of whether the Bankruptcy Code provisions are in conflict with the arbitration clause is *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3rd Cir.1989). In *Hays*, the trustee of the chapter 11 debtor, Monge Oil Corporation, filed claims in the district court against the brokerage firm with whom the debtor had done business. The trustee alleged that the broker had mishandled the debtor's accounts and consequently violated federal and state securities laws in addition to fraudulent conveyance and constructive trust claims arising under 11 U.S.C. § 544(b). The broker moved to compel arbitration of the trustee's claims pursuant to the arbitration clause in its agreement with the debtor. Relying on the discretionary standard of *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3rd Cir.1983), the district court denied enforcement of the arbitration clause. It reasoned that, because neither the trustee nor the creditors he represented had actually signed the arbitration agreement, it was appropriate for the court to refuse to enforce the arbitration agreement. *Hays*, 885 F.2d at 1151.

---

**1.** Although an objection to a claim is a contested matter governed by Fed.R.Bankr.P. 9014, pursuant to Fed.R.Bankr.P. 3007 if an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding. Because the debtor has asserted a counterclaim for money damages from Hilton International, its objection to Hilton International's claim now constitutes an adversary proceeding.

The court in *Hays* held that a trustee is bound by the terms of an arbitration clause to the same extent as the debtor would be, but that the trustee's Code § 544(b) claims are not subject to arbitration because they are not derivative of the debtor, and the trustee accordingly is not bound by the terms of the arbitration clause in the agreement. Id. at 1153–55. Moreover, relying on *McMahon*, the *Hays* court held that the district court erred in its determination that it could exercise discretion to decline to enforce the arbitration clause. It found that the trustee did not meet its burden of demonstrating that the Bankruptcy Code provisions, policy or legislative history demonstrated any conflict with enforcement of an arbitration clause in a non-core proceeding brought by the trustee to enforce a claim of the estate in district court. Id. at 1156–57. Furthermore, surveying the Supreme Court arbitration cases since the decision in *Zimmerman*, the Third Circuit concluded that it could "no longer subscribe to a hierarchy of congressional concerns that places bankruptcy law in a position of superiority over that [Arbitration] Act." Id. at 1161. The Third Circuit reasoned in *Hays* that it was no longer good law to conclude that the policies of the Bankruptcy Code outweigh the policies of the Arbitration Act.

The reasoning of the *Hays* court has been followed in recent decisions in other jurisdictions. *In re P & G Drywall and Acoustical Corp.*, 156 B.R. 704 (Bankr. D.Me.1993). *Matter of Interco Inc.*, 137 B.R. 993 (Bankr.E.D.Mo.1992); *Miller v. Dean Witter Reynolds, Inc.*, 134 B.R. 640 (D.Minn.1991); *In re Chorus Data Systems, Inc.*, 122 B.R. 845, 852 (Bankr.D.N.H. 1990).

In *Chorus Data*, Mitsubishi Electronics America, Inc. (MELA) filed a counterclaim against the debtor, based upon an alleged breach of a written product development agreement that contained an arbitration clause. In accordance with that provision, MELA had initiated arbitration proceedings in which the debtor participated through the close of discovery. When the debtor filed for protection under Chapter 11 of the Bankruptcy Code, MELA moved for relief from stay in order to enforce the arbitration clause. Acknowledging that the claim clearly was a core proceeding under 28 U.S.C. § 157(b)(2)(C), the court granted relief from the automatic stay in order to proceed with arbitration, notwithstanding that enforcement of the arbitration clause would allegedly hamper debtor's reorganization by requiring it to incur additional costs in traveling to Chicago for arbitration proceedings.

The *Chorus Data* court held that arbitration should not yield to the Bankruptcy Code unless there is a demonstrated specific conflict between enforcement of an arbitration clause and the textual provisions or purposes of the Bankruptcy Code. Id. at 851. Significantly, the court emphasized that the burden of proof is on the party opposed to arbitration to demonstrate that any underlying purpose of the Bankruptcy Code is adversely affected by enforcing an arbitration clause, and that enforcement of the clause would seriously jeopardize the objectives of the Code. Id.

The *Chorus Data* court concluded that in "trying to accommodate the legitimate policies underlying both the Federal Arbitration Act and the Bankruptcy Code, [the court's discretion] should be in the direction of the enforcement of the arbitration clause bargained for by the parties in their contractual dealings". Id. at 855.

■ Guided by the foregoing analysis, the court finds that in the matter *sub judice*, the Debtor likewise fails to demonstrate that enforcement of the arbitration clause in the Management Agreement is contrary to the provisions or purpose of the Bankruptcy Code. The Debtor points to no Code provision, policy or portion of legislative history that demonstrates that arbitration should not be compelled.

The Debtor relies on *Zimmerman* and other pre-*McMahon* and pre-*Hays* decisional authority to substantiate its position that Hilton International is not entitled to arbitrate its claim. However, *Hays* specifically addresses the Congressional policy interpreted in *Zimmerman* and states that it is no longer applicable in light of the 1984

Amendments to the Bankruptcy Code and the recent line of Supreme Court opinions regarding the Arbitration Act. This Court finds the reasoning in *Hays* authoritative.

The fact that the matter before the court is a core proceeding does not mean that arbitration is inappropriate. *Chorus Data*, 122 B.R. at 847. The description of a matter as a core proceeding simply means that the bankruptcy court has the jurisdiction to make a full adjudication. However, merely because the court has the authority to render a decision does not mean it should do so. The discussion in *Hays* regarding core and non-core proceedings is not read by this court as suggesting that core proceedings may not be subject to arbitration. Rather, it appears that the *Hays* court sought to distinguish between actions derived from the debtor, and therefore subject to the arbitration agreement, and bankruptcy actions in essence created by the Bankruptcy Code for the benefit ultimately of creditors of the estate, and therefore not encompassed by the arbitration agreement.

The substance of the Debtor's objection to the Hilton International claim is derived from or governed by the very same Management Agreement between the parties which contains the arbitration clause. While it is true that a significant portion of the claim stems from damages that result from the Debtor's rejection of the Management Agreement pursuant to Bankruptcy Code § 365, the bankruptcy issues as to whether rejection of the Management Agreement was a proper exercise of the Debtor's business judgment already have been determined in the hearings conducted by the court. Assessment of the allowable amount of damages which result from the rejection requires merely the application of contract law—a matter in which the arbitrator has equal, or perhaps greater, expertise than the bankruptcy court.

■ In the present matter, in terms of efficiency, arbitration is perhaps better suited to resolve the disputes of all the parties. The former partners are presently in arbitration with Hilton International. The addition of the Debtor to the proceeding will enable all claims to be resolved in one forum. In any event, the factors of cost and expediency do not weigh mightily against arbitration. The fact that arbitration may not be as efficient or as expeditious has been held not to justify refusal to enforce arbitration clauses in itself, even in bankruptcy. *Chorus Data*, Id. at 850.

As a general rule, the policy behind Chapter 11 Reorganization recognizes the expedient and economic resolution of business affairs. However, inquiry regarding conflict between the statutes should not be as broad as to swallow the policies of the Arbitration Act, especially when confirmation is not delayed by arbitration. Id. at 852. Following the reasoning of *Hays* in this case, the court cannot perceive any greater impact on the Bankruptcy Code in compelling arbitration than denying it. *Hays*, 885 F.2d at 1158.

■ Additionally, the court finds no merit to Debtor's waiver argument in relation to Hilton International's participation in the bankruptcy case. (Debtor's 8/16/93 Memorandum at 15) Waiver may be deemed inapplicable to bankruptcy where a claimant has but one forum and method to enforce its rights. A creditor's act of filing a proof of claim does not constitute waiver of the creditor's right to invoke an otherwise valid arbitration clause. *Hart Ski Manufacturing Co. v. Maschinenfabrik Hennecke (In re Hart Ski Mfg. Co.)*, 711 F.2d 845, 846 (8th Cir.1983). Hilton International had no recourse but to enter its opposition to Debtor's § 365 motion to reject the Management Agreement in order to protect its position. If, thereafter, it had not filed a proof of claim, it would not have had any rights in the proceedings.

## II. Estimation of Hilton International's Claim pursuant to § 502

■ Section 502(c) of the Bankruptcy Code, governing the estimation of claims, provides that:

(c) There shall be estimated for purpose of allowance under this section—

(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would un-

duly delay the administration of the case; or

(2) any right to payment arising from a right to equitable remedy for breach of performance.

11 U.S.C. § 502(c).

It is generally held that the language of the foregoing code section is mandatory and that it creates in the court an affirmative duty to estimate an unliquidated or contingent claim. *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 65 (Bankr. E.D.Va.1982), *In re Frontier Airlines, Inc.*, 137 B.R. 811, 814 (Bankr.D.Colo.1992), *In re Pizza of Hawaii*, 40 B.R. 1014, 1017 (D.Haw.1984) aff'd, 761 F.2d 1374 (9th Cir. 1985).

The Court finds that the debtor has failed to demonstrate that arbitration would "unduly delay the administration of the case". The Debtor has stated that the confirmation is not dependent on resolution of this claim. The proposed distribution that the unsecured creditors will receive under the Plan will not be altered as a result of the allowance or disallowance of the Hilton International claim. The size of the claim only affects the amount that the partners will contribute under the plan. Therefore, since the court finds no "undue delay" in submitting the matter to arbitration, the demand is denied.

### CONCLUSION

Although the bankruptcy court has jurisdiction to hear this matter, Hilton International's Cross-Motion to Compel Arbitration is granted and the matter will be referred to arbitration to liquidate the claims of the parties. Because the motion to grant relief from stay to permit arbitration is granted, the court does not reach the summary judgment motion which properly is a matter for the arbitrator. Counsel for Hilton International shall settle an order on notice to the Debtor.